

Anthony J. Davis, Esq. (#033811992)
Alashia L. Chan, Esq. (#015391994)
1 Gatehall Drive, Suite 100
Parsippany, New Jersey 07054
(201) 712-1616
Attorneys for Plaintiff Above And Beyond -
Business Tools and Services for Entrepreneurs, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ABOVE AND BEYOND - BUSINESS TOOLS AND SERVICES FOR ENTREPRENEURS, INC., | Civil Action No: _____ |
| PLAINTIFF, | **COMPLAINT** |
| vs. | |
| IRA CORNELIUS, | |
| DEFENDANT. | |

Plaintiff, Above And Beyond - Business Tools and Services for Entrepreneurs, Inc. ("Beyond" or "Plaintiff"), through its attorneys, Santomassimo Davis LLP, by way of Complaint against Defendant Ira Cornelius ("Cornelius" or "Defendant"), says as follows:

## INTRODUCTION

1.     Beyond brings this action against its former employee, Defendant Ira Cornelius, who was a Division Sales Director and then a sales Team Leader at Beyond managing sales and sales representatives, and who now works for a direct competitor of Beyond named Membership Merchant which is a trade name of Cornelius Consulting LLC, which is based in Peoria, Arizona

("Membership Merchant").  Cornelius owns and operates Membership Merchant and Cornelius Consulting LLC.

2.     Since leaving his employment with Beyond, Cornelius has breached his post-employment non-solicitation covenants contained in his employment agreement, has misappropriated Beyond's confidential information, and has tortiously interfered with Beyond's contractual and business relations and prospective economic advantage.

3.     Beyond and Cornelius entered into a valid written employment agreement on January 31, 2018 (the "Employment Agreement"), a true copy is attached hereto as **Exhibit A**. The parties also entered into a Residual Purchase Agreement on January 16, 2020 in which Beyond paid Cornelius in advance for certain future commissions and confirmed the restrictive covenants in the Employment Agreement.

4.     Beyond seeks monetary damages, injunctive relief as well as attorneys' fees, costs of suit and expenses incurred by it in this litigation as authorized and agreed upon in the Employment Agreement.

## **PARTIES**

5.     Beyond is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business located at 902 Carnegie Center, Suite 160, Princeton, New Jersey 08542.

6.     Defendant Ira Cornelius is a natural person residing at 13839 West Desert Moon Way, Peoria, Arizona 85383, and was employed by Beyond as a Division Director and a sales Team Leader as well as a sales representative.

7.     Cornelius currently owns and operates Membership Merchants which is a tradename for Cornelius Consulting, LLC, an Arizona limited liability company, which has a

business address that is the same as Cornelius' home address namely, 13839 West Desert Moon Way, Peoria, Arizona 85383.

8.      Cornelius is the owner and statutory agent for Cornelius Consulting, LLC.

9.      Cornelius Consulting, LLC applied for and registered the tradename "Membership Merchant" with the Arizona Secretary of State on July 16, 2020.

10.     Cornelius markets his Membership Merchant business using a website with the following domain name:  www.membershipmerchants.com, which was created on July 14, 2020 and is registered to a company named "Beyond, Inc." which is based in Arizona and was purportedly set up by Cornelius to improperly compete with Beyond.

11.     Membership Merchant is a direct competitor of Beyond and it provides electronic payment solutions using a platform named MX Merchant Gateway which is owned and provided by a company named Priority Technology Holdings, Inc. a/k/a/ Priority Payment Systems, LLC (collectively "Priority").

12.     Cornelius works with Priority and offers its MX Merchant Gateway payment processing solution that allows users to process electronic payments from a single platform.

13.     In the electronic payment industry, Priority is what is known as an independent sales organization or "ISO" based in Alpharetta, Georgia.   Priority states on its website (https://www.pps.io) that:  "Priority Payment Systems, LLC is a registered ISO/MSP of each of Wells Fargo Bank N.A., Concord, CA; Synovus Bank, Columbus, GA; Citizens Bank, N.A., Providence, RI; Axiom Bank, N.A., Maitland, FL; and PB&T Bank, Pueblo, CO."  Priority, through its sub-ISOs, assists merchants processing credit cards, among other things.

14.     On information and belief, Membership Merchant is what is known as a sub-independent sales organization or "Sub-ISO" with a relationship with Priority.

15.     Membership Merchant holds itself out to the public as an independent company selling payment process solutions on Priority's MX Merchant Gateway platform.

16.     Cornelius owns and operates Membership Merchants and markets and sells its services in direct competition with Beyond.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a).

18.     Complete diversity exists because Cornelius is a citizen of Iowa and Beyond is a citizen of New Jersey.

19.     The amount-in controversy requirement exceeds $75,000, exclusive of interest and costs, because Beyond seeks injunctive relief and monetary damages, the combined value of which exceeds $75,000.00.

20.     Cornelius is subject to the personal jurisdiction of this Court because he consented to and submitted to the personal jurisdiction and venue of this Court when he signed his Employment Agreement with Beyond.

21.     More specifically, Section p of the Employment Agreement with Beyond provides that the exclusive and convenient forum and venue for any disputes between the parties arising out of such agreements shall be any proper state or federal court for Mercer County, New Jersey, and the parties expressly submitted to the personal jurisdiction of this Court by entering into the Employment Agreement.  See Exhibit A at ¶ p.

22.     The subject Employment Agreement further states that it shall be governed by and construed in accordance with the laws of the State of New Jersey, and that no conflict-of-law provisions shall be invoked to permit the application of the laws of any other state or jurisdiction. See Exhibit A at ¶ p.

**BACKGROUND**

23.     Beyond is primarily engaged in the nationwide business of marketing and providing electronic payment transaction processing services for businesses, also known as merchants, that accept payment for goods and services through credit and debit cards.

24.     Beyond's customers are comprised of small and mid-size merchants operating in a wide array of industries, including, but not limited to, restaurants, autobody shops, retail stores, and beauty salons, and are located throughout the United States.

25.     Beyond has been doing business since 2017 and has worked hard to build its strong reputation in the industry and to achieve recognition in the financial services and payment processing industries among its target demographic of merchants.

26.     Beyond's industry is extremely competitive and merchants have their pick from numerous credit card processing companies.

27.     Beyond employs a nationwide salesforce to sell its services to merchants around the country and offers a generous compensation package, including offering an upfront advance Signing Bonus equal to 50% of estimated gross profit for the first year of processing in addition to monthly residual payments and, once an employee is vested, residuals that continue for the lifetime of the merchant relationship even if the employee terminates his or her employment.   On top of this, employees, like Cornelius, are eligible for portfolio buyouts through which Beyond makes an upfront payment to the employee equal to thirty times the monthly residuals generated from the merchant accounts.

28.     As a result, Beyond places significant value upon its goodwill and business relationships, and employees of Beyond know that by the very nature of their employment they

are entrusted with, and are given access to, Beyond's most proprietary and confidential information.

29.     Accordingly, Beyond requires every employee, like Cornelius who was in a sales and management positions with Beyond, to sign a written employment agreement that contains business protection covenants, namely an agreement by the employee to refrain from soliciting Beyond customers and employees for twelve (12) months and twenty-four (24) months, respectively, as well as an express covenant not to use any confidential information learned or obtained while employed with Beyond for three (3) years following the termination of their employment.

30.     In the Employment Agreement, Beyond's managers like Cornelius acknowledge and agree that Beyond will be entitled to temporary, preliminary and permanent injunctive relief as well as money damages for breaches of these covenants as set forth in detail in the agreement. See Exhibit A at ¶ i.

## CORNELIUS' EMPLOYMENT WITH BEYOND

31.     On or about May 1, 2017, Cornelius became employed by Beyond as a Division Sales Director marketing and selling Beyond's services to merchants and was promoted to Division Director and then to sales Team Lead managing sales and sales representatives.

32.     On January 31, 2018, Cornelius entered into the written Employment Agreement with Beyond and it provided the terms and conditions of his employment.

33.     Section h of the Employment Agreement provides certain "Business Protection Covenants," in which Cornelius acknowledged and agreed, among other things, that as an employee of Beyond, he is responsible for and directly involved in developing goodwill and business relationships for the benefit of Beyond.  See Exhibit A at ¶ h.

34.     Section h of the Employment Agreement further states that Cornelius is responsible for the operation of Beyond's business and the development of customers, he will be entrusted with, and has knowledge of, Beyond's most proprietary and valuable confidential information; and he will gain unique insight into and knowledge of the skills, talents and capabilities of Beyond's employees and independent contractors.  Id.

35.     Specifically, the Employment Agreement contains a "**Non-Solicitation of Customers**" provision that states that during Cornelius' employment with Beyond, and for a period of **twelve (12) months** after termination of his employment for any reason, he is prohibited from, directly or indirectly, soliciting, enticing, or inducing any Beyond customers to: (A) become a merchant of any other person or entity engaged in any business activity that competes with any business conducted by Beyond, OR (B) cease doing business with Beyond.  See Exhibit A at ¶ h.i.a.i.

36.     In addition, Cornelius agreed to not solicit Beyond merchants for which Cornelius had been paid compensation from Beyond for a period of **thirty (30) months** under the same terms as set forth above.  See Exhibit A at ¶ h.i.a.i.

37.     For the purposes of this "Non-Solicitation of Customers" provision, the Employment Agreement defines Beyond's customers as "any customer, client, merchant, or other party having a contractual or business relationship with [Beyond], including referral relationships, to which [Beyond] is providing services."  Id.

38.     The Employment Agreement also contains a "**Non-Solicitation of Employees**" covenant that states that during Cornelius' employment with Beyond and for a period of twenty-four (24) months after termination of his employment for any reason, he is prohibited from, directly or indirectly, soliciting any employee or independent contractor of Beyond to work for a third

party other than Beyond or engage in any activity that would cause any employee or independent contractor to violate any agreement with Beyond.  See Exhibit A at ¶ h.ii.b.

39.     The Employment Agreement further contains certain confidentiality obligations that prevent Cornelius from: (i) directly or indirectly revealing, reporting, publishing, disclosing or transferring Beyond's "Confidential Information" to any person or entity; (ii) using any of Beyond's "Confidential Information" for any purpose other than for the benefit of Beyond; or (iii) assisting any person or entity other than Beyond to secure any benefit from Beyond's "Confidential Information."  See Exhibit A at ¶ g and Page 4.

40.     As stated in Section g and on Page 4 of the Employment Agreement, Beyond invests considerable time and resources into developing and maintaining its "Confidential Information."  Id.

41.     Beyond's "Confidential Information" is defined in the Employment Agreement as:

Any confidential, proprietary and/or trade secret information of [Beyond] in any form that is not generally known by the public or in the industry, including, but not limited to, the following: information which [Beyond] designates as confidential, in writing; inventions and intellectual property; research and development information, reports plans and data; components, methods, and strategies; technical information about [Beyond]'s products and planned products; source code for applications an computer software; standard operating procedures; marketing, sales products, and business plans and strategies; pricing and pricing models; compensation plans and strategies; personnel and sales training information and materials; information about [Beyond]'s relationships and agreements with merchants, customers, suppliers, and vendors; any information not generally known by persons other than [Beyond] personnel or persons subject to confidentiality; confidential and proprietary information of [Beyond]'s affiliates, subsidiaries, and related companies; information provided to [Beyond] by third parties subject to an obligation or agreement to keep such information confidential; individual or consumer credit or financial account information, private financial or other legally protected information of individuals or businesses; tax and social security numbers; any information which [Cornelius] knows or should know that [Beyond] would not care to have revealed to competitors or others; and any confidential information which [Cornelius] makes, conceives or develops as a result of [Cornelius]'s relationship with [Beyond].

-8-

See Exhibit A at Page 4.

42.     Importantly, the Employment Agreement does not contain any covenant not to compete, and explicitly states the following:

> This Agreement is not intended to preclude [Cornelius]'s opportunity to engage in or otherwise pursue occupations in any unrelated or non-competitive field of endeavor, or to engage in or otherwise pursue directly competitive endeavors so long as they meet the requirements of this Agreement. [Cornelius] represents that [Cornelius]'s experience and abilities are such that the existence or enforcement of these covenants and promises will not prevent [Cornelius] from earning or pursuing an adequate livelihood and will not cause an undue burden or economic hardship to [Cornelius] or [Cornelius]'s family. [Cornelius] acknowledges that these covenants and promises (and their respective time, geographic, and/or activity limitations) are reasonable and that the limitations are no greater than necessary to protect [Beyond]'s legitimate business interests in light of [Cornelius]'s position with [Beyond] and [Beyond]'s business.

See Exhibit A at ¶ h.

43.     Similarly, in the Residual Purchase Agreement dated January 16, 2020, Cornelius acknowledged that he was bound by the same restrictive covenants set forth in the Employment Agreement and those restrictions continued in full force and effect and were not modified in any way by the Residual Purchase Agreement.

44.     As such, Beyond has not imposed any post-employment restrictions on Cornelius that would hinder his ability to make a living or pursue other similar employment, and upon his separation from Beyond, he was free to work for a direct competitor of Beyond. However, he agreed to not solicit Beyond's merchants or its employees after his employment ended as a material term and condition of his employment with Beyond. Id.

45.     Additionally, the Employment Agreement states that Cornelius acknowledges that it would be difficult to calculate Beyond's damages should he breach his confidentiality obligations and/or his covenants not to solicit, and that money damages would therefore be an inadequate remedy. See Exhibit A at ¶i.

46.     Accordingly, Cornelius acknowledged that upon such breach, Beyond may seek and shall be entitled to temporary, preliminary, and/or permanent injunctive relief against him, and/or other appropriate orders to restrain such breaches.  Id.

47.     Further, nothing in the Employment Agreement limits or prevents Beyond from seeking any other damages or relief provided by applicable law for breach of any section or provision of the Employment Agreement.  Id.

48.     The parties explicitly agreed in the Employment Agreement that Beyond may obtain specific performance, and that Beyond shall not be required to post bond in the event it is necessary for Beyond to obtain injunctive relief, any bond requirement is thereby expressly waived by Cornelius.  Id.

49.     Lastly, the Cornelius Employment Agreement provided that in any suit brought by one party against the other arising from, relating to or in connection with the Employment Agreement, the prevailing party will be entitled to recover all reasonable attorneys' fees, costs of suit and fees.  See Exhibit A at ¶ r.

50.     The Employment Agreement's restrictive covenants are reasonable and conform to New Jersey law and should be enforced as written.

## BEYOND'S PROPRIETARY AND CONFIDENTIAL INFORMATION AND CORNELIUS' ACCESS THERETO

51.     During and in the course of his employment at Beyond working as a sales manager, Cornelius gained substantial knowledge regarding Beyond's merchants, pricing terms, and sales force, and he developed and/or maintained relationships with Beyond's merchants and employees, all at Beyond's direction and expense and with Beyond's support.

52.     Before, during, and after Cornelius' employment with Beyond, Beyond devoted significant time and resources to developing and maintaining merchant accounts and to creating

and maintaining an effective sales force, formulating sales strategies, and developing a sales and merchant support infrastructure.

53.     During and in the course of his employment with Beyond while a sales representative and as a sales manager, Cornelius was entrusted with and had access to Beyond's Confidential Information.

54.     Specifically, Cornelius was entrusted with and had access to "Confidential Information" including, but not limited to, the following:

   a.   Extensive sales information regarding Beyond's merchants, including merchants' contract terms, account volume, chargeback percentage, fees, margins, and the commissions generated by merchants for Beyond's employees;

   b.   Beyond's confidential pricing, marketing, and sales strategies, including nationwide strategies and those designed for particular merchants or geographic locations;

   c.   Beyond's business, marketing, and advertising plans, including plans for the generation of new merchant accounts and channels of business;

   d.   Beyond's current products, services, and other offerings, including knowledge of sales performance by offering, strengths and weaknesses of offerings, customer feedback, and year-over-year trends;

   e.   Beyond's product development, including information on products, services, and other offerings contemplated or in the development pipeline, new product launches, new sales initiatives, and the ways new offerings would be marketed to merchants; and

f.   Beyond's methods of training, evaluating, developing, and compensating employees, including information about sales strategies, commission payments and negotiations, and sales-promotion activities.

55.    Before, during and after Cornelius' employment with Beyond, Beyond devoted significant time and resources to protecting its Confidential Information, including a requirement that all employees, like Cornelius, sign the Employment Agreement and agree to protect all of Beyond's Confidential Information and to resist any disclosures.

## CORNELIUS TERMINATED HIS EMPLOYMENT AND IS NOW SOLICITING BEYOND EMPLOYEES AND CUSTOMERS

56.    On or about February 3, 2020, Cornelius voluntarily resigned from his position as a Team Leader with Beyond.

57.    As is its practice, shortly thereafter, Beyond sent a separation letter to Cornelius ("Cornelius Separation Letter") confirming the date of his voluntary separation from Beyond, advising of the date his medical and dental coverage would terminate, requesting he return all Beyond company materials and property, and reminding Cornelius of his post-employment obligations to Beyond pursuant to the terms of his Employment Agreement.

58.    The Separation Letter recited the Employment Agreement provisions that contained Cornelius' covenant not to solicit Beyond customers for a period of twelve (12) months generally and thirty (30) months for his merchants following termination and Cornelius' covenant not to solicit Beyond employees for a period of twenty-four (24) months following his termination.

59.    After terminating his employment with Beyond, Cornelius began operating Membership Merchants and competing with Beyond by using his website and the tradename he applied for and owns through his company named Cornelius Consulting LLC.

60.     In setting up and operating this competing business, Cornelius' intention was to, directly or indirectly, solicit, entice and induce Beyond's merchants to cease doing business with Beyond and start working with Cornelius.

61.     As an indication of his unlawful intent, Cornelius went so far as to use the name of Plaintiff's company "Beyond" as the registered owner of his website www.membershipmerchants.com which can be seen from the publicly available ICANN domain name registration information.  Attached as **Exhibit B** is a true and correct copy of the ICANN Registration Report as of February 18, 2021 for Defendant's website which lists the "Registrant" as "Beyond, Inc." with an address in Arizona.

62.     Beyond is neither the Registrant nor the owner or operator of the Defendant's website.

63.     Cornelius' current work selling competing payment processing services through Membership Merchants is not in and of itself a violation of his post-employment obligations to Beyond.

64.     However, since terminating his employment with Beyond, Cornelius has breached the Employment Agreement as he has been actively soliciting Beyond employees and customers and is using Beyond's Confidential Information in order to convert those customers, who he signed on or helped sign on as merchants while employed by Beyond, over to Membership Merchants in direct violation of the Non-Solicitation of Customers covenant in the Employment Agreement.

65.     Based on information and belief, Cornelius has contacted current Beyond employees and solicited them to work for his company and to compete with Beyond.

66.     Cornelius has solicited Beyond's merchants in an effort to entice and induce them to switch their payment processing from Beyond to Cornelius and his company, Membership Merchants.

67.     For example, Beyond has confirmed that Cornelius solicited the following former Beyond Merchants who terminated their contractual relationship with Beyond and began using Cornelius and his company, Membership Merchants, for their electronic payment processing needs including, but not limited to, the following:  Sunburst Pets located in Phoenix, AZ; Jeffrey's Performance located in Phoenix, AZ; North Valley Fans and Blinds located in Phoenix, AZ;  East Valley Fans and Blinds located in Mesa, AZ; and Bicycle Depot located in Glendale, AZ.

68.     Customer testimonials published by Cornelius on his Membership Merchants website confirm that the above Beyond merchants have moved from Beyond and now work with Cornelius for their electronic payments processing services in violation of the Employment Agreement.  Attached as **Exhibit C** are true and correct copies of customer testimonials published on Defendant's website as they existed on February 18, 2021.

69.     The testimonials from Beyond's former merchants like North Valley Fans and Blinds and East Valley Fans and Blinds confirm they are now processing with Cornelius and he was the reason they terminated their contractual relationship with Beyond.  Id.

70.     Based on information and belief, Cornelius is also sharing Beyond's confidential and trade secret information about its merchants and its employees with others who work for or are affiliated with Priority and other competitors.   He is providing Beyond's confidential information to Priority's agents, employees and their independent contractors who then use that information to solicit Beyond's merchants and employees.  The solicitations are being made to induce and entice the merchants and employees to work with Beyond's competitors.

-14-

71.     Based on information and belief, this includes unlawfully sharing Beyond's confidential information about Beyond's relationships and it merchants to solicit, entice and induce Beyond's customers and convert them to competing payment processors such as Iozona, LLC, doing business under the trade name PayCompass Financial Services, which is based in Phoenix, Arizona ("PayCompass").

72.     PayCompass, which is an Arizona limited liability company, is headquartered at 4747 East Elliot Road, Suite 29-440, Phoenix, Arizona 85044.

73.     PayCompass is a direct competitor of Beyond and was founded by, and is being operated by, Mr. Justin Volrath.  Mr. Volrath is also a former Beyond employee.

74.     PayCompass also markets the electronic payment solutions of a Priority.

75.     Based on information and belief, PayCompass also employees or is currently affiliated with numerous other former Beyond employees such as Joe Paddock, Shan Abassi, Misay Khoundara, Justin Bohl, David Trumbo, Dillon Lockhart, Alan Bernard, Terry Rokusek, Dustin Robinson, Jim Kirchoff, Nicholas Goeman, William Chieves and others who are actively marketing and selling PayCompass' services as a Sub-ISO of Priority in direct competition with Beyond.

76.     Cornelius has shown a wonton disregard for the Employment Agreement and engaged in conduct that is grossly violative of his post-employment covenants.

### FIRST COUNT
**(Preliminary and Permanent Injunction)**

77.     Beyond repeats and reiterates each and every allegation of the preceding enumerated paragraphs as set forth herein and at length.

78.     Cornelius should be enjoined from soliciting Beyond's employees and customers as agreed.

79.     The restrictive covenants Cornelius agreed to are reasonable and should be enforced in accordance with New Jersey law as provided in the subject Employment Agreement.

80.     Cornelius should be preliminarily and permanently enjoined from soliciting Beyond's customers for the twelve-month period and from soliciting Beyond merchants for which Cornelius had been paid compensation from Beyond for a period of thirty months as agreed to in the Employment Agreement.

81.     Cornelius should be preliminarily and permanently enjoined from soliciting Beyond's employees for the twenty-four-month period agreed to in the Employment Agreement.

82.     Cornelius should be preliminarily and permanently enjoined from using Beyond's confidential information he obtained as a result of his employment with Beyond for the three-year period agreed to in the Employment Agreement.

83.     Beyond has no adequate remedy at law and will suffer immediate and irreparable harm absent injunctive relief as prayed for herein.

**WHEREFORE,** Plaintiff Beyond seeks an order enjoining Defendant Cornelius from:

a.      directly or indirectly soliciting, enticing, or inducing any Beyond customer to (i) become a merchant of any other person or entity engaged in any business activity that competes with any business conducted by Beyond at any time during the period of each of the Former Employee's respective employment with Beyond, or (ii) cease doing business with Beyond, for the agreed twelve-month period;

b.      directly or indirectly soliciting any employee or independent contractor of Beyond to work for a third party other than Beyond or engage in any activity that would cause any employee or independent contractor to violate any agreement with Beyond for the agreed twenty-four-month period;

-16-

c.      using Beyond's confidential information obtained while an employee with Beyond; and

d.      awarding Beyond such other and further relief as the Court deems just and proper.

### SECOND COUNT
### (Breach of Contract)

84.     Beyond repeats and reiterates each and every allegation of the preceding enumerated paragraphs as set forth herein and at length.

85.     The Employment Agreement, and the business protection covenants contained therein, is a valid and binding contract.

86.     The Non-Solicitation covenants and confidentiality provisions contained in the Employment Agreement are reasonable in time and scope and are appropriately tailored to protect the legitimate business interests of Beyond.

87.     The non-solicitation covenants and confidentiality provisions contained in the Employment Agreement are reasonable, lawful, and enforceable restrictions on Cornelius and his post-employment activities especially while working for a direct competitor of Beyond.

88.     Beyond performed all of its obligations under the Employment Agreement.

89.     Based on the foregoing, Beyond is entitled to enforce the Employment Agreement.

90.     As detailed above, by soliciting Beyond employees and customers during the prohibited time periods after his employment with Beyond terminated, and improperly using Beyond's confidential information to do so, Cornelius has breached the Employment Agreement.

91.     As a result of each of the Cornelius' breaches, Beyond has suffered and continues to suffer substantial economic and monetary damages in an amount to be determined at trial and, unless restrained, each of their respective violations, unless enjoined, will continue, and cause

Beyond to lose merchants and other customers and otherwise suffer irreparable injury to its business, reputation, and goodwill.

**WHEREFORE,** Plaintiff Beyond demands judgment against Defendant Cornelius for injunctive relief and monetary damages in an amount to be determined at trial together with interest, punitive damages, reasonable attorneys' fees, costs of suit and such other and further relief as the Court may deem equitable and just.

**THIRD COUNT**
**(Unjust Enrichment)**

92.    Beyond repeats and reiterates each and every allegation of the preceding enumerated paragraphs as set forth herein and at length.

93.    Defendant has benefited from and has been unjustly enriched at the expense of and to the detriment of Beyond by wrongfully receiving compensation for the merchants and customers improperly solicited.

94.    Defendant has been unjustly enriched and wrongfully collected such compensation and, under the circumstances, has been unjustly enriched.

95.    Beyond is entitled to recover from Defendant all amounts wrongfully taken and improperly retained by Defendant, plus interest thereon.

96.    As a direct and proximate result of Defendant's unjust enrichment, Beyond has suffered monetary injury and seeks damages in the amount necessary to restore Beyond to the position it would be in had Defendant not been unjustly enriched.

**WHEREFORE,** Plaintiff Beyond demands judgment against Defendant Cornelius for monetary damages to be determined at trial together with interest, punitive damages, reasonable attorneys' fees, costs of suit and such other and further relief as the Court may deem equitable and just.

## <u>FOURTH COUNT</u>
### (Tortious Interference with Contractual and Business Relations
### and Prospective Economic Advantage)

97.     Beyond repeats and reiterates each and every allegation of the preceding enumerated paragraphs as set forth herein and at length.

98.     Beyond had or has existing contractual and/or employment relationships with its merchants and employees.

99.     Beyond had a reasonable expectation of economic benefit or advantage from its merchants and employees.

100.    These expectations are built on Beyond's current customers, its reputation in the industry, and its commitment to long-term partnerships with its current and future merchants and employees.

101.    Cornelius was and is aware of Beyond's contractual and/or employment relationships and its reasonable expectations of economic benefit or advantage from its merchants and employees.

102.    At the time Defendant made the improper solicitations alleged herein, Cornelius knew that Beyond had contractual relationships with the merchants, customers, and employees to which the solicitations were made and made such solicitations for the purpose of inducing and/or deceiving such merchants, customers, and employees so that they would terminate their existing contractual relationships with Beyond.

103.    By soliciting Beyond's merchants and employees to modify, breach, or terminate their contractual or employment relationships with Beyond, Cornelius has interfered (or imminently intend to interfere) with Beyond's contractual relationships, thereby undermining or destroying the intent and purpose of the contractual relationships.

104.    By soliciting Beyond's merchants and employees to modify, breach, or terminate their contractual or employment relationships with Beyond, Cornelius has interfered (or imminently intends to interfere) with Beyond's reasonable expectations of economic benefit or advantage from its merchants and employees.

105.    Cornelius' interference is wrongful, intentional, willful, and done with malice.

106.    As a result of Defendant's interference, Beyond's contractual relationships have been, or are imminently threatened to be, modified, breached, or terminated, and its reasonable expectations of economic benefit or advantage has been interfered with by Cornelius.

107.    Absent Defendant's interference, Beyond would have received the anticipated economic benefits or advantages from its merchants and employees.

108.    Defendant's conduct has resulted in immeasurable and irreparable injury to Beyond, including a loss of the benefit of its contractual relationships and a loss of its anticipated economic benefits or advantages from its merchants and employees.

109.    Unless Defendant's conduct is enjoined, Beyond will continue to suffer further immeasurable and irreparable injury.

110.    Beyond has no adequate remedy at law.

111.    Defendant's conduct was unjustified and done intentionally and maliciously causing injury to Beyond.

112.    As a result of each Defendant's aforesaid conduct, Beyond has suffered damage by reason of the termination of these existing contracts and/or refusal to enter into such contracts with Beyond.

113.    As a result of each Defendant's aforesaid conduct, Beyond has suffered damage by reason of the loss of employees who have left the employment of Beyond and began working for direct competitors such as PayCompass as aforesaid.

**WHEREFORE,** Plaintiff Beyond demands judgment against Defendant Cornelius for injunctive relief and monetary damages in an amount to be determined at trial together with interest, punitive damages, reasonable attorneys' fees, costs of suit and such other and further relief as the Court may deem equitable and just.

### SIXTH COUNT
### (Misappropriation of Proprietary and Confidential Information)

114.    Beyond repeats and reiterates each and every allegation of the preceding enumerated paragraphs as set forth herein and at length.

115.    During and in the course of his employment with Beyond, Cornelius was entrusted with and had access to Beyond's proprietary and Confidential Information as detailed above and as set forth in the Employment Agreement.

116.    Beyond entrusted Cornelius with and gave them access to its proprietary and Confidential Information for the sole purpose of furthering its business and competitive interests.

117.    Beyond's proprietary and Confidential Information was and is not generally available to the public.

118.    Cornelius would not have been aware of Beyond's proprietary and Confidential Information if not for his employment with Beyond in violation of the covenants set forth in the Employment Agreement and discussed herein.

119.    Defendant's conduct constitutes an unlawful misappropriation of proprietary and confidential information and his continued possession and misuse of such information has caused and will continue to cause Beyond irreparable harm.

120.    Absent injunctive relief requiring Cornelius to return and cease using Beyond's proprietary and Confidential Information, Beyond will continue to suffer irreparable and immeasurable harm.

121.    Beyond has no adequate remedy at law.

**WHEREFORE,** Plaintiff Beyond demands judgment against Defendant Cornelius for injunctive relief and monetary damages in an amount to be determined at trial together with interest, punitive damages, reasonable attorneys' fees, costs of suit and such other and further relief as the Court may deem equitable and just.

<u>**SEVENTH COUNT**</u>
**(Attorneys' Fees and Costs)**

122.    Beyond repeats and reiterates each and every allegation of the preceding enumerated paragraphs as set forth herein and at length.

123.    Based upon the foregoing, Cornelius breached his Employment Agreement with Beyond resulting in this action being brought against him.

124.    The Employment Agreement explicitly provide for an award of reasonable attorneys' fees, costs of suit and fees to the prevailing party in any action arising from, relating to or in connection with the Employment Agreement.  See Exhibit A at ¶ r.

125.    By reason of the foregoing, and as a direct result of Cornelius' breaches, Beyond will has been damaged and will continue to incur attorneys' fees, costs of this suit and fees in bringing and prosecuting this action against the Cornelius for claims that all arise from, relate to and are in connection with the Employment Agreement.

126.    By reason of the foregoing, and as a direct result of Cornelius' breaches, Beyond will prevail in this litigation and be entitled to recover as damages all reasonable attorneys' fees, costs and fees in bringing and prosecuting this action against the Cornelius.

**WHEREFORE,** Plaintiff Beyond demands judgment against Defendant Cornelius for monetary damages in an amount to be determined at trial for all reasonable attorneys' fees, costs of suit, fees and such other and further relief as the Court may deem equitable and just.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Beyond respectfully prays for judgment against Defendant Cornelius as follows:

1.      That the Court enter judgment in favor of Beyond and against Defendant on all claims for relief made against Cornelius in this action;

2.      That the Court enter preliminary and permanent injunctive relief, including, but not limited to, requiring Cornelius, and all those working in concert with them, to abide by the terms of his Employment Agreement and to return and cease to use Beyond's proprietary and Confidential Information, this includes the requirement that Cornelius be enjoined and restrained from:

a.      directly or indirectly soliciting, enticing, or inducing any Beyond customer or merchant to (i) become a merchant of any other person or entity engaged in any business activity that competes with any business conducted by Beyond, or (ii) cease doing business with Beyond for the agreed time periods set forth in the Employment Agreement;

b.      directly or indirectly soliciting, enticing, inducing or communicating with any employee or independent contractor of Beyond to work for a third party other than Beyond or engage in any activity that would cause any employee or independent contractor of Beyond to violate any agreement with Beyond for the time period set forth in the Employment Agreement; and

-23-

c.      using Beyond's proprietary and confidential information that is in his possession, that he obtained or has access to as a result of his employment with Beyond.

3.      That the Court award Beyond monetary damages in an amount to be determined at trial;

4.      That the Court award Beyond its reasonable attorneys' fees, costs and expenses of this litigation as provided in the Employment Agreement and as otherwise provided by law;

5.      That all costs and interest be assessed against Cornelius;

6.      That the Court award such other and further relief as shall appear just and proper.

SANTOMASSIMO DAVIS LLP

By:     */s/ Anthony J. Davis*
        Anthony J. Davis
        Alashia L. Chan
        Attorneys for Plaintiff Above And
        Beyond - Business Tools and Services
        for Entrepreneurs, Inc.

Dated: February 22, 2021